UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL SEVILLE LEWIS,<br><br>             Plaintiff,<br><br>  v.<br><br>SNOHOMISH COUNTY SHERIFFS, et al.,<br><br>             Defendant. | CASE NO. C19-870-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Michael Seville Lewis, is currently confined at Snohomish County Corrections, and filed a 28 U.S.C. § 1983 prisoner civil rights complaint on June 6, 2019. Dkt. 1, 6. The Court declined to serve the complaint because it was deficient and subject to dismissal and granted plaintiff leave to file an amended complaint to cure the deficient complaint. Dkt. 7. On August 21, 2019, plaintiff filed an amended complaint. The Court having reviewed the amended complaint recommends it be dismissed with prejudice.

**FACTUAL ALLEGATIONS**

**A.**    **Original Complaint**

In the original complaint, plaintiff alleged he has been "sexually harassed scrutinized and racially discriminated against and the severest my religious artifacts have been used as a

report and recommendation - 1

laughing matter to a out spoken racist who makes threats of violence." Dkt. 6, at 3. Plaintiff alleges he is "not sure but fact is I feel racially segregated [sic] by these officers." *Id.*

Plaintiff also alleged C/O Hecht made sexual comments "about [his] religious artifact" and made "comments of violence putting [him] in fear of proceeding to court or even being alone with this officer." *Id.* Plaintiff alleges C/O H. McAllister "laughs with her BFF and makes derogatory comments about me looking like a school girl" and that she "told me to tuck my dress/skirt in referring to my white tee shirt." *Id.* He claims C/O McCallister "spoke with classification officer S. Dilley when I was in hearing distance saying either he goes or I'll quit. Hours later I was moved back to max housing unit." *Id.* Mr. Lewis alleges C/O McCallister "gets S. Dilley to move 'dark skinned' inmates out of her module if she feels she don't like them or feels they will be trouble when in fact its just an opinion of her own thoughts." *Id.* Mr. Lewis contends classification will not move him to a lesser restrictive unit "due to I have to go through Heidi McAllisters unit to get to the full rack unit" and C/O McAllister has "made it impossible for me to succeed to a better unit, module worker or even trustie." *Id.*, at 5.

Finally, plaintiff alleged he "recently received an infraction from a officer and was 'found guilty.' On appeal I was denied even though I had full proof I was 'not guilty.'" *Id.* As relief, plaintiff seeks "religious freedom and the right to follow that religion" and monetary damages in the amounts of 300,000.00 actual damages, $1.5 million in punitive damages, and $100,000 from both defendant McAllister and defendant Hecht. Dkt. 6, at 4.

**B.    Amended Complaint**

The amended complaint alleges in January 2019, in the "dayroom" Deputy Hecht asked whether plaintiff was wearing a condom on his head and told plaintiff to take it off. Dkt. 12 at 4-5. Later, on May 5, 2019, while Deputy Hecht was transporting plaintiff and nine other inmates

report and recommendation - 2

1  to Court, the Deputy said "ever been beat in the superior elevator" and "you want to get beat in

2  the elevator?" *Id.* at 5. The amended complaint alleges none of the inmates said a word and that

3  Deputy Hecht's statements made plaintiff fearful and violate plaintiff's right to wear a Kufi. *Id.*

4        The amended complaint also alleges C/O Hecht "has sexually scrutinized and racially

5  discriminated against me and severest my religious artifacts have been used as a laughing

6  matter." *Id.* at 6. Plaintiff alleges he is afraid of C/O Hecht and that Lt. Sundstrom and others

7  take Deputy Hecht's side when plaintiff files grievances. Plaintiff alleges he is "traumatized

8  about being around any office of the Snohomish County Sheriff's Bureau." *Id.*

9        The amended complaint further alleges Heidi McAllister told plaintiff to tuck his shirt

10  into his pants calling the shirt plaintiff's "skirt." *Id.* at 7. Plaintiff alleges she told him he looks

11  like a schoolgirl waiting to pee with the shirt untucked. *Id.* The amended complaint alleges after

12  plaintiff made a PREA complaint, Ms. McAllister contacted Sharon Dilley and plaintiff was

13  removed from Ms. McAllister's module. *Id*. at 8. Plaintiff alleges he feels the removal was

14  retaliatory because he was moved to a more restrictive module. Plaintiff also alleges that LT

15  Sundstrom dismissed the PREA claim and that K. Parker the classification supervisor has

16  dismissed all kites plaintiff has submitted requesting he be moved to a different module.

17        As relief, plaintiff requests that the defendants be ordered plaintiff have the right to

18  religious freedom, and be awarded monetary damages of $150,000 in actual damages, $1

19  million dollars in punitive damages and $100,00 from defendants Hecht, McAllister, Sundstrom,

20  Dilley and Parker. *Id*. at 9.

21                        **DISCUSSION**

22        The Court declined to serve the original complaint because it was deficient and subject to

23  dismissal for failure to state a claim upon which relief may be granted. 28 U.S.C.

1  §§ 1915(e)(2)(b)(ii), 1915A(b)(1). In the order granting plaintiff leave to amend, plaintiff was
2  notified that to sustain a civil rights action under § 1983, he must show (1) he suffered a
3  violation of rights protected by the Constitution or created by federal statute, and (2) the
4  violation was proximately caused by a person acting under color of state or federal law. *See*
5  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

6  **A.    Free Exercise of Religion**

7  Plaintiff was notified that in order to implicate the Free Exercise Clause of the First
8  Amendment, he "must show that [defendant] burdened the practice of [his] religion, by
9  preventing [him] from engaging in conduct mandated by [his] faith, without any justification
10 reasonably related to legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 735
11 (9th Cir. 1997) (citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)
12 (footnote omitted)). "In order to reach the level of a constitutional violation, the interference with
13 one's practice of religion 'must be more than an inconvenience; the burden must be substantial
14 and an interference with a tenet or belief that is central to religious doctrine.'" *Freeman*, 125
15 F.3d at 737 (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)).

16 Plaintiff alleges that C/O Hecht and McAllister made derogatory or sexual comments
17 about his clothing and "religious artifact" and that C/O Hecht made "comments of violence."
18 Dkt. 6, at 4; Dkt. 12 at 5-7. These generalized assertions are insufficient, without more, to
19 support a claim. Mr. Lewis must allege facts sufficient to show that a particular defendant (or
20 defendants) substantially burdened his ability to exercise his religion and must explain *why*
21 defendants' actions were a substantial burden on his ability to exercise his religion.

22 Plaintiff does specify that C/O Hecht told plaintiff to take his Kufi off in the dayroom;
23 however this does not substantially burden plaintiff's ability to exercise his religion. Prisoners do

report and recommendation - 4

not have an unbridled First Amendment right to wear a kufi at all times. *See Rattler v. Sublett*, 145 F.3d 1340 (9th Cir. 1998) (unpublished) ("Rattler contends that prison officials were not entitled to summary judgment on the claim that they violated his First Amendment right to wear a kufi (Islamic head covering) at all times without limitation. This contention lacks merit."). Here, the amended complaint alleges plaintiff was told in the day room to take his Kufi hat off. There is no indication plaintiff was denied the right to don the hat during religious services.

**B.     Equal Protection**

The Fourteenth Amendment's Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To bring a successful equal protection claim, a plaintiff must show differential treatment from a similarly situated class. *See Washington v. Davis*, 426 U.S. 229, 239 (1976). For this differential treatment to give rise to a claim under 42 U.S.C. § 1983, "one must show intentional or purposeful discrimination." *Draper v. Rhay*, 315 F.2d 193, 198 (9th Cir. 1963) (inmate failed to show § 1983 violation in absence of "intentional or purposeful discrimination").

Here, plaintiff makes conclusory statements that he was moved out of C/O McAllister's unit and into a more restrictive unit after he made a PREA claim against her, that Sunstrom dismissed the PREA claim and that other defendants declined plaintiff's request to be moved to a less restrictive unit. In both the original and amended complaints, plaintiff fails to allege facts to support these conclusory assertions or demonstrating that he was treated differently than other similarly situated prisoners. Mr. Lewis has failed to allege any facts showing discriminatory intent or purpose for his housing placement. *See Draper*, 315 F.2d at 198.

report and recommendation - 5

The allegations contained in both the original and amended complaints, thus fail to set forth sufficient facts that state a claim upon which relief may be granted that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citations omitted). Accordingly, plaintiff has failed to state an equal protection claim.

**C.    Retaliation**

Plaintiff also alleges generally C/O Hecht made "comments of violence" putting him in fear of proceeding to court and that all of the other defendants' actions were also retaliatory of plaintiff's grievances and kites over his religious headgear, fears of staff and placement in a more restrictive unit. A First Amendment retaliation claim in the prison context requires the plaintiff to prove: (1) the state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir.2005).

Here, plaintiff claims the defendants all acted in retaliation, but his complaints fail to set forth specific facts to support the claim. Plaintiff has been notified he must provide additional facts; explain what he means by "comments of violence," explain whether these comments were made because of some protected conduct he was engaged in (and the basis for this belief), that the comments chilled the exercise of his First Amendment rights, and that the statements were

not made to advance a legitimate correctional goal.  However, while the amended complaint alleges retaliation it fails to set forth facts necessary to the claim.

**D.      Rule 8, Conclusory Statements, Any Other Claims**

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires a complaint to include a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (*citing Conley v. Gibson*, 355 U.S. 41 (1957)).

In many instances, the allegations of plaintiff's complaint and amended complaint are vague or confusing and he fails to allege sufficient facts from which it may be inferred that the named defendants violated his constitutional rights. Rather the complaints set forth conclusory allegations. A complaint is deficient where it sets forth "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-557. A claim upon which the court can grant relief must have facial plausibility, i.e., a complaint that pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, at 678.

## CONCLUSION

The Court recommends the complaint be dismissed with prejudice. Plaintiff was notified his original complaint was deficient because it failed to set forth specific facts to support each claim.  Plaintiff was granted leave to file an amended complaint but the amended complaint he filed is similarly deficient. Accordingly, it appears the deficiencies in the complaint and amended complaint are not capable of being cured through further amendment.

This report and recommendation is not a final order. Plaintiff should not file an appeal in the Ninth Circuit Court of Appeals until the assigned District Judge enters a final order. If

report and recommendation - 7

1  plaintiff objects to this recommendation he must file his objection—limited to seven pages—by
2  **September 13, 2019.**  The Clerk should note the matter for **September 20, 2019,** as ready for
3  the District Judge's consideration. The failure to object may affect the right to appeal the
4  recommendation.
5        DATED this 30th day of August, 2019.

                                              BRIAN A. TSUCHIDA
                                              United States Magistrate Judge

report and recommendation - 8